```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND
```

|                                      |   |                              |
|--------------------------------------|---|------------------------------|
| STORMFIELD CAPITAL FUNDING I, LLC    | : |                              |
|                                      | : |                              |
| v.                                   | : | Civil Action No. DKC 23-3244 |
|                                      | : |                              |
| MONSTER INVESTMENTS, INC., et al.    | : |                              |

**MEMORANDUM OPINION**

This breach of contract case involves a loan secured by a deed of trust on a particular property and a guaranty, followed by an alleged default. Plaintiff Stormfield Capital Funding I, LLC ("Plaintiff" or "Stormfield") contends that the deed of trust improperly failed to identify the proper owners of the property. Presently pending and ready for resolution is the partial motion for summary judgment filed by Plaintiff. (ECF No. 74). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part.

**I.   Background**

**A.   Factual Background[1]**

Monster Investments, Inc. ("Monster") is a Maryland corporation that was formed in or about October 2010 by Lorressa

---

[1] Unless otherwise noted, the following facts are undisputed and construed in the light most favorable to the nonmoving party.

Dawn Robinson ("Robinson").  (ECF Nos. 74-2 ¶ 1; 74-3, at 1-6). Monster's Articles of Incorporation also named Robinson as one of two directors.  (ECF No. 74-3, at 4).  On January 16, 2020, by informal action, Monster's Board of Directors elected Donald I. Bernard ("Bernard") as president, sole shareholder, and sole director of Monster.  (ECF No. 74-4, at 1-3).  Despite the election of Bernard as president of Monster, at all material times, Robinson was in charge of Monster's business activities.  (ECF No. 74-5, at 8).

K L A R, Inc. ("KLAR") is a Maryland corporation formed by Robinson on September 15, 2016.  (ECF Nos. 74-6; 74-7).  "At all material times, Dawn Robinson has been the sole shareholder, director and officer of KLAR and the person responsible for operating it and managing its business."  (ECF No. 74-8, at 7). Monster and KLAR share a principal office located at 6026 Swanson Creek Lane, Hughesville, Maryland 20637 ("Property").

   **1.   The Property**

On March 23, 2020, a Deed of Gift dated November 6, 2019 ("Deed"), memorializing the transfer of the Property from Wesley J. Adams to Monster and KLAR as tenants in common was recorded in the Land Records of the Circuit Court for Charles County.  (ECF No. 74-9).  "From the period of October 24, 2019, through October 24, 2020, KLAR maintained a property insurance policy on the

2

Property, of which KLAR and Robinson were aware." (ECF Nos. 74-2 ¶ 8; 74-10). KLAR "maintained a property insurance policy on the Property for the period of October 22, 2020, through October 22, 2021." (ECF Nos. 74-2 ¶ 9; 74-11).

### 2. The Stormfield Loan Transaction

On February 28, 2020, KLAR and Monster granted a Purchase Money Deed of Trust, Security Agreement and Assignment of Contracts, Leases and Rents ("Dynasty DOT") to Demetris Voudouris and Richard Sugarman, as Trustees, for the benefit of Dynasty, LLC ("Dynasty"), securing the Property, and other real properties, for the repayment of a loan in the original principal amount of $975,000. (ECF No. 74-12). Robinson executed the Dynasty DOT on behalf of KLAR and Monster and "represented that she was the Sole Stockholder and President of both corporations." (*Id.* at 16).

"In or about October 2020, Monster, through Bernard and Robinson, applied for a loan from Stormfield." (ECF Nos. 74-15; 74-16). Monster, Bernard, and Robinson provided Stormfield with "various corporate governance and other documents supporting its application." (ECF No. 74-16). The documents Monster, Bernard and Robinson provided to Monster did not disclose KLAR's joint ownership of the property. Despite having an appraisal from August 25, 2020, which disclosed joint ownership of the Property, Robinson provided Stormfield with an appraisal from September 30, 2019,

3

which was performed before Monster and KLAR acquired the property. (ECF No. 74-17).

Based on the documents Monster, Bernard, and Robinson provided to Stormfield, Stormfield issued a Financing Letter of Intent ("LOI") to Bernard on October 23, 2020. The LOI stated "This Letter of Intent is not intended as an exhaustive, definitive, or all-inclusive description of all terms that will govern the loan." (ECF No. 74-18, at 1). The LOI explained Stormfield's proposal to provide Monster a loan of $312,000 in exchange for repayment under the terms of the LOI. (*Id.* at 1-4). The letter of intent stated that the "proposed loan shall be secured by a first mortgage/deed or trust lien on the Property." (*Id.* at 2). In this document, the "property" was defined by street address.

On November 13, 2020, Bernard executed a Promissory Note ("Note") on behalf of Monster for a loan in the principal amount of $312,000. (ECF No. 74-19). The Note provided that it is "secured by a Deed of Trust . . . of even date herewith as a first lien on property known as 6026 Swanson Creek Lane, Hughesville, Maryland . . . and the guaranty of Donald I. Bernard." (*Id.* at 6).

The Note provides that "Upon the occurrence of any Event of Default . . . , the entire outstanding balance of this Note shall,

4

at the option of the Holder, become immediately due and payable without notice or demand, and in any event, interest shall immediately accrue at a 'default rate' which means the rate of interest which is Eighteen (18%) percent per annum." (*Id.* at 2). Event of Default is defined as a "default in the payment of any interest, principal or other amounts due hereunder during the term of this Note and such default continuing for a period of ten (10) days after the due date thereof," and "default in the payment of any principal or other amounts due at the end of the term of this Note." (*Id.* at 2-3).

That same day, Monster granted to David R. Mahdavi, as Trustee, for the benefit of Stormfield a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Stormfield DOT"), securing the Property for repayment of the Note. (ECF No. 74-20). The Stormfield DOT provides that Monster:

> irrevocably and unconditionally mortgages, grants, warrants, conveys, bargains, sells, and assigns to [David. R. Mahdavi], in trust, for benefit of [Stormfield] . . . the Mortgaged Property (as defined in this Security Instrument), including the real property located in the City of Hughesville, Charles County, State of Maryland having an address of 6026 Swanson Creek Lane, Hughesville, Maryland 20637 and described in Exhibit A attached to this Security Instrument and incorporated by reference (the "Land") . . . .

5

(ECF No. 74-20, at 1). The Stormfield DOT defines "Mortgaged Property," in relevant part, as "all of [Monster's] present and hereafter acquired right, title and interest, if any, in and to all of the following: (a) the Land . . . ." (*Id.* at 4).

Separately, Bernard entered into a Guaranty Agreement with Stormfield on November 13, 2020, in which Bernard "agreed to, unconditionally guaranty to [Stormfield] repayment and performance of all indebtedness, liabilities and obligations of [Monster] to [Stormfield] in connection with the Loan." (*Id.* at 1). The Guaranty Agreement provides that "[u]pon the occurrence of an Event of Default . . . followed by any failure in the payment or performance of any liability guaranteed hereby, the liability of [Bernard] shall be effective immediately without notice and shall be payable or performable on demand without any suit or action against [Monster]." (*Id.* at 3).

Bernard, as Guarantor, further represented to Stormfield that:

> (1) The Guarantor has received reasonably equivalent value in exchange for his execution of this [Guaranty] Agreement.
>
> (2) The Guarantor has legal capacity to enter into this Agreement.
>
> (3) The execution and delivery of this [Guaranty] Agreement, the consummation of the transactions contemplated hereby and the fulfillment of and compliance with the terms

6

> and conditions of this Agreement is not prevented or limited by and does not conflict with or result in a breach of the terms, conditions or provision of any contractual or other restriction on Guarantor, or agreement or instrument of any nature to which Guarantor is now a party or by which Guarantor or his property is bound, or constitutes a default under any of the foregoing.
>
> (4) Guarantor is the Sole Shareholder and Sole Director of Borrower, and the assumption by the Guarantor of the obligations hereunder will result in a direct and material financial benefit to the Guarantor.
>
> . . . .
>
> (7) All reports, statements and other data furnished by the Guarantor to the Lender in connection with the Loan are true, correct and complete in all material respects and do not omit any fact or circumstance which would make the statements contained therein misleading, present fairly the financial position of the Guarantor as of the date stated therein; and that no material adverse change has occurred in the financial condition of the Guarantor or his asset since the date of the financial statement.

(ECF No. 74-21, at 4).

On November 13, 2020, Stormfield loaned Monster a total of $312,000, of which $215,525.39 was used toward the satisfaction of the Dynasty DOT recorded against the Property.  (ECF No. 74-22). On January 28, 2021, Dynasty recorded a Certificate of Satisfaction stating that it had been fully paid and discharged, and that the Dynasty DOT liens were released.  (ECF No. 74-23).

7

On March 1, 2023, Defendants Diana Theologou, Gregory Thorne, Adrian Jacobs, Brian Campbell, and Christine Cotton were appointed as Substitute Trustees under the Stormfield DOT, replacing David R. Mahdavi as Trustee. (ECF No. 74-24). Stormfield is the current holder of the Note and the beneficiary under the Stormfield DOT.

Monster failed make payments as they became due and failed to cure that default. (ECF No. 74-25). On May 20, 2024, Stormfield sent Monster a "Demand for Payoff," in the total amount of $506,865.83.[2] (ECF No. 74-26).

B. **Procedural Background**

Plaintiff filed the initial complaint in this case on November 29, 2023. (ECF No. 1). Plaintiff filed a corrected amended complaint on May 22, 2024. (ECF No. 45). On October 11, 2024, Plaintiff moved for partial summary judgment on Count I, or in the alternative Count II, and Count IX of the corrected amended complaint. Defendants Monster, KLAR, and Bernard, did not oppose Plaintiff's motion.

---

[2] The total payoff amount of $506,865.83 is comprised of the following: (1) Principal Balance totaling $312,000, (2) Interest Accrued from August 1, 2021, to May 20, 2024, totaling $156,745.30, (3) Unpaid Late Charges totaling $144.99, (4) Unpaid Charges totaling $37,609.54, and (5) Other Charges totaling $365.00. (ECF Nos. 74-2 ¶¶ 34-38; 74-26).

8

**II.  Standard of Review**

A court will grant a motion for summary judgment when there is no genuine dispute of a material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden to demonstrate the absence of a genuine dispute of material fact.  *Med. Mut. Ins. Co. of N.C. v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024)(citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)).  If the moving party meets this burden, the burden then shifts to the non-movant to show specific facts demonstrating a genuine issue for trial.  *Id.*  A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

A material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

**III. Analysis**

Plaintiff moves for summary judgment on Count I – Reformation, or in the alternative, on Count II - Equitable Subrogation.

9

Additionally, Plaintiff moves for summary judgment on Count IX - Breach of Guaranty Agreement against Donald I. Bernard. (ECF No. 74-1). Defendants have not opposed Plaintiff's motion. "Even where the nonmoving party fails to respond, however, the requested relief is not automatically granted." *See J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F.Supp.3d 593, at 604 (D.Md. 2015) (citing Fed.R.Civ.P. 56(e)(2)). The court must, instead, "review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

### A. Count I – Reformation

Plaintiff seeks reformation of the Stormfield DOT to (1) include "KLAR as a grantor of the Stormfield DOT, *nunc pro tunc*," and (2) encumber "both Monster and KLAR's interests in the Property . . . such that 100% of the Property is subject to the Stormfield DOT and secures the Note currently held by Stormfield." (ECF No. 74, at 11).

This court has explained:

> Reformation is an equitable remedy that is only warranted when one of two circumstances exists: "either there must be mutual mistake, or there must be fraud, duress, or inequitable conduct." *Maryland Port Admin. v. John W. Brawner Contracting Co.*, 303 Md. 44, 59, 492 A.2d 281 (1985); *see also Julian v. Buonassissi*, 414 Md. 641, n. 15, 997 A.2d 104

>       (2010) ("when a competent person signs a contract or disposes of his or her property in the absence of fraud, misrepresentation, mistake, undue influence, or fiduciary relations, the contract will be enforced.") "The burden on a party seeking reformation is substantial and must overcome the rebuttable presumption that deliberately prepared and executed written instruments accurately reflect the parties' true intentions." 28 Williston on Contracts § 70:209 (4th ed.)

*Jaguar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc.*, 738 F.Supp.2d 640, 650 (D.Md. 2010). "The party seeking reformation must establish that (1) the contract as written should not be enforced, either because of a mutual mistake, or duress or inequitable conduct, and (2) there is clear, convincing and satisfying proof of a mutual understanding and bargain that has not been accurately expressed." *Id.*, at 651 (quoting *City of Balt. v. De Luca-Davis Constr. Co.*, 210 Md. 518, 524 (1956) (internal quotation marks omitted)).

Plaintiff argues reformation is appropriate based on the misrepresentations of Monster, Bernard, and KLAR. As written, the Stormfield DOT that secured the Property for the repayment of the Note was only executed by Monster, not by KLAR. (ECF No. 74-20, at 1). Thus, Plaintiff's loan is only secured by Monster's interest in the Property, not by the Property as a whole.

Plaintiff asserts "Monster, Bernard, and KLAR misrepresented to Stormfield that the Property was solely owned by Monster and

11

concealed KLAR's joint ownership of the Property at the time Bernard and Robinson applied for the Loan on Monster's behalf." (ECF No. 74, at 6). Plaintiff contends that "[a]s Monster's sole shareholder, director, and President, Bernard represented that he intended to have to be fully secured by the Property but intentionally failed to disclose documentation or other information indicating KLAR's joint ownership of the Property." (*Id.* at 7). Plaintiff further contends that "KLAR's sole shareholder, director, and President[,] Robinson, who acted as Monster's authorized representative in applying for the Stormfield Loan and providing documents to Stormfield, knew of and was in possession of KLAR's property insurance policies on the Property but did not disclose these policies to Stormfield." (*Id.*).

Plaintiff has provided evidence that Defendants were aware of Monster and KLAR's joint ownership of the property, but that the joint ownership was not disclosed to Plaintiff. (ECF Nos. 74-9; 74-12; 74-18; 74-19; 74-20; 74-21). It is not presently necessary to determine whether the failure to disclose joint ownership was due to inequitable conduct because Plaintiff has not put forth evidence showing "clear, convincing and satisfying proof of a mutual understanding and bargain that has not been accurately expressed." *Jaguar Land Rover N. Am., LLC*, 738 F.Supp.2d at 651 (citation omitted).

12

Plaintiff contends that "Stormfield intended that the Loan be fully secured by the Property at the time of the transaction, and Bernard and Monster acknowledged their intention of the same." (ECF No. 74, at 7). This contention is unsupported by the plain language of the Stormfield DOT which provides that Monster:

> irrevocably and unconditionally mortgages, grants, warrants, conveys, bargains, sells, and assigns to [David. R. Mahdavi], in trust, for benefit of [Stormfield] . . . the Mortgaged Property (as defined in this Security Instrument), including the real property located in the City of Hughesville, Charles County, State of Maryland having an address of 6026 Swanson Creek Lane, Hughesville, Maryland 20637 and described in Exhibit A attached to this Security Instrument and incorporated by reference (the "Land") . . . .

(ECF No. 74-20, at 1). The Stormfield DOT defines "Mortgaged Property" in relevant part, as "all of [Monster's] present and hereafter acquired right, title and interest, if any, in and to all of the following: (a) the Land . . . ." (*Id.* at 4). Despite Plaintiff's "understanding that the 'proposed loan shall be secured by a first mortgage/deed or trust lien on the property,'" the Stormfield DOT only provides Monster's interest in the Property as security for the Loan. (ECF No. 74-20, at 1).

It is correct, however, that the LOI executed by Plaintiff and Bernard, as President of Monster and Guarantor, explicitly stated that it was "Re: 6026 Swanson Creek Lane, Hughesville, MD

13

20637 First Position Mortgage . . . ." (ECF No. 74-18). Further, the LOI listed the intended collateral as "a first mortgage/deed or trust lien on the Property." (*Id.* at 2). Thus, the LOI demonstrates the intent of Bernard and Monster to secure the loan with "a first mortgage/deed or trust lien on the Property." (*Id.*).

Plaintiff fails, however, to provide evidence showing that **KLAR** intended to secure the Loan with its interest in the Property. First, Stormfield and Monster could not have intended for KLAR to be a party to the Stormfield DOT because Plaintiff was unaware of KLAR's interest in the Property. Second, neither KLAR, nor Robinson, was a party to the LOI which explained the purported intention of Monster and Bernard was to secure the Loan with the entirety of the Property. Finally, neither Monster nor Bernard had the ability to encumber KLAR's interest. Thus, there is not clear, convincing, and satisfying proof that KLAR was intended to be a party to the Stormfield DOT or that KLAR's interest in the Property was intended to secure the Loan.

Because Plaintiff has not produced evidence that the KLAR intended to secure the Loan with its interest, reforming the Stormfield DOT to include KLAR as a grantor is inappropriate. Accordingly, Plaintiff's motion for summary judgment on Count I is denied.

14

### B. Count II – Equitable Subrogation

In the alternative to Count I, Plaintiff seeks an order declaring that (1) "Stormfield is entitled to equitably subrogate the rights of the lienholders of the Dynasty DOT" and (2) "Stormfield is entitled to an equitable lien in first lien position in the amount of $215,525.39 against the Property for the benefit of Stormfield." (ECF No. 74, at 11).

> "Broadly defined, subrogation is the substitution of one person in the place of another with reference to a lawful claim or right." *Rinn v. First Union Nat'l Bank of Md.*, 176 B.R. 401, 407-08 (D.Md. 1995). "The party subrogated acquires all rights, securities, and remedies the creditor has against the debtor and is regarded as constituting one and the same person with the creditor whom he succeeds." *Id.*

*Bank of N.Y. Mellon v. Ashley*, No. 14-2914-DKC, 2017 WL 1048213, at *6 (D.Md. Mar. 20, 2017). "Equitable subrogation requires that: (1) there is a debt which a party other than the subrogee owes, and (2) the subrogee paid the debtor's loan to protect his or her own rights, not as a volunteer." *Id.* (quoting *Fishman v. Murphy*, 433 Md. 534, 554 (2013) (citation omitted)). "A subrogee 'is not a volunteer . . . when he pays the debt at the . . . request of the person whose liability he discharges,' where there is an understanding or agreement that the benefit is not a gift." *Id.* (quoting *Springham v. Kordek*, 55 Md.App. 449, 455 (1983)). "[T]he basic purpose of the equitable subrogation doctrine is to prevent

15

unjust enrichment." *G.E. Capital Mortg. Servs., Inc. v. Levenson*, 338 Md. 227, 245 (1995).

It is undisputed that Monster and KLAR owed a debt to Dynasty pursuant to the Dynasty DOT. (ECF No. 74-12). It is also undisputed that at the November 13, 2020, settlement of the Stormfield DOT, Plaintiff paid $215,525.39 toward the satisfaction of the Dynasty DOT recorded against the Property in exchange for repayment under the terms of the Note as secured by the Stormfield DOT and the Guaranty Agreement. (ECF No. 74-22). On January 14, 2021, Dynasty released the liens of the Dynasty DOT. (ECF No. 74-23). It is clear that Plaintiff paid the Dynasty DOT to protect its own interests, not as a volunteer, and is therefore entitled to subrogate Dynasty's rights. Accordingly, Plaintiff's motion as to Count II will be granted.

### C. Count IX – Breach of Guaranty of Agreement

Plaintiff argues it is entitled to summary judgment against Mr. Bernard on its Breach of Guaranty Claim pursuant to the Guaranty Agreement. (ECF No. 74, at 10).

This court has explained:

> A guaranty agreement is a contract under which the guarantor promises to perform the obligations of the principal if the principal fails to perform. *See Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 260-61, 492 A.2d 1306 (1985). Under the objective theory of contracts, which applies in Maryland,

16

> a court is to determine from the language of the agreement, what a reasonable person in the position of the parties would have understood the contract to mean at the time the contract was entered into; when the language of the contract is plain and unambiguous, there is no room for construction as the courts will presume that the parties meant what they expressed.
>
> *Mathis v. Hargrove*, 166 Md.App. 286, 318-19, 888 A.2d 377 (2005)(internal marks and citation omitted).

*CapitalSource Fin., LLC v. Delco Oil, Inc.*, 608 F.Supp.2d 655, 662 (D.Md. 2009).

It is undisputed that on November 13, 2020, Mr. Bernard and Plaintiff executed the Guaranty Agreement. (74-21, at 1-8). Pursuant to the Guaranty Agreement, Mr. Bernard "unconditionally and irrevocably guaranties to [Stormfield] the full and prompt payment and performance of all liabilities of [Monster] to [Stormfield] pursuant to the Note and all other documents and agreements relating to the Loan." (ECF No. 74-21, at 1). Mr. Bernard, therefore, is liable to Plaintiff in the event Monster defaulted on the Note.

Plaintiff provides undisputed evidence that Monster defaulted the Note by failing to make the required payments and that as of May 20, 2024, the total balance Monster owed to Plaintiff was $506,865.83. (ECF No. 74-26). Plaintiff has shown that there are

17

no genuine issues of material fact regarding Monster's default under the Note, thus, under the Guaranty Agreement, Mr. Bernard is liable to Plaintiff.  Accordingly, Plaintiff's motion for summary judgment as to Count IX will be granted.

**IV.  Conclusion**

For the foregoing reasons, Plaintiff's motion for partial summary judgment will be granted in part and denied in part.  A separate order will follow.

                                    /s/
                            DEBORAH K. CHASANOW
                            United States District Judge